# United States Court of Appeals
## For the First Circuit

No. 03-1206

TOMÁS E. COLÓN;
R.K. GRACE & COMPANY OF PUERTO RICO, INC.,

Plaintiffs, Appellees,

v.

R.K. GRACE & COMPANY;
JOHN KAWESKE,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch and Howard, Circuit Judges.

Francisco M. López-Romo for appellants.
Robert Márquez-Sánchez for appellees.
Jorge M. Izquierdo-San Miguel on brief for appellees.

December 22, 2003

**BOUDIN**, **Chief Judge**.  This appeal arises out of a modestly complex commercial dispute resulting in a jury verdict for the plaintiffs.  The plaintiffs in the district court were Tómas Colón and R.K. Grace & Company of Puerto Rico ("Grace Puerto Rico"); the defendants were R.K. Grace & Company ("Grace U.S.A.") and John Kaweske.  What follows is a bare-bones summary of the background events and trial.

Grace U.S.A. was a Florida company operating as an investment advisor and a broker-dealer in securities and Kaweske was its president and chief executive.  In January 1995, Grace U.S.A. entered into a written agreement with Colón, who had previously been a customer representative for other companies (e.g., Morgan Stanley).  The agreement provided that Colón, acting as an independent contractor, would handle securities purchases and sales from his customers through Grace U.S.A. and receive a portion of the commission on such transactions.

The January 1995 agreement contained an arbitration clause in which Colón and Grace U.S.A. agreed to arbitrate any dispute between them "under" the agreement.  In June 1995 Colón also signed a so-called "U-4" form of the National Association of Securities Dealers ("NASD") agreeing to arbitrate any dispute between him and his firm (Grace U.S.A.), a customer, "or any other person" for which arbitration is required under NASD rules.  The

main question briefed on this appeal is whether either or both arbitration agreements embrace the claims that later arose.

Colón was quite successful and, in January 1997, Kaweske and Colón formed a new Puerto Rico company--Grace Puerto Rico--in which each partner owned 50% of the shares. Colón claimed that there was an oral understanding between him and Kaweske that this new company would provide administrative services for Colón and a number of new Grace U.S.A. representatives in Puerto Rico; that 100% of the commissions would be returned by Grace U.S.A.; and that a small portion of the commissions would be divided between Colón and Kaweske.

The new arrangement did not work as allegedly planned. According to Colón, by 1998 Grace U.S.A. was seriously in arrears in its promised payments because Kaweske was withholding amounts due to cover imprudent investments he had made. Further, Colón said that Grace Puerto Rico was being harmed by this retention because it could not pay its own bills and Colón was being forced to advance money himself for this purpose.

In February 2001, Colón and Grace Puerto Rico brought suit against Kaweske and Grace U.S.A. in federal district court in Puerto Rico. Among the claims, and the only ones ultimately to go to the jury, were a breach of contract claim by Grace Puerto Rico against Grace U.S.A. and a breach of fiduciary duty claim by Colón against Kaweske. The defendants asserted that the claims against

-3-

them were covered by the two arbitration agreements noted above and by an alleged third agreement dated January 1997 between Grace U.S.A. and Colón containing an arbitration clause akin to the one in the January 1995 agreement.

Colón responded that neither the January 1995 agreement nor the 1995 U-4 could bind Grace Puerto Rico, which did not exist until 1997.  As to the January 1997 agreement, Colón denied that he had signed it.  When a version purportedly bearing his signature was produced by defendants, Colón said (backed by a document examiner) that the signature was not his and asked the district court to exclude it from consideration.  The district judge who had initially denied the arbitration request based on the 1995 agreements now ruled that he wanted the jury's determination on the signature issue before finally deciding whether arbitration was required.

A jury trial began in November 2002.  Colón testified that he thought that the January 1995 agreement had been superceded by the new arrangements made in 1997 but, in any event, denied making any claims under the January 1995 agreement.  The district judge then began to curtail defense counsel's efforts to pursue the January 1995 agreement, saying "that does away with the claims from that first contract.  There is nothing to arbitrate."  As for the arbitration clause in the January 1997 agreement, the defense never sought to offer it as an authenticated contract signed by Colón.

At the close of evidence the district court rejected the arbitration defense.

On the merits, Colón presented testimony on his own behalf from an employee of Grace U.S.A., from a margin clerk of Grace Puerto Rico, and from a public accountant who testified that Grace U.S.A. owed Grace Puerto Rico $249,000. The defense made some headway in cross-examining both Colón and the public accountant but rested without presenting any witnesses of its own for the defense. The jury then awarded Grace Puerto Rico $249,245 against Grace U.S.A. on the contract claim and Colón $75,000 against Kaweske on the fiduciary duty claim.[1]

On post-judgment motions by the defendants, the district judge reaffirmed his denial of arbitration. He also rejected a number of merits-related arguments by the defense for judgment as a matter of law–a matter to which we will return. The defendants then appealed to this court, arguing primarily that arbitration of the dispute was required. Plaintiffs say that this claim was waived because defendants failed to take an interlocutory appeal and that in any event arbitration was not required.

Denials of arbitration under the Federal Arbitration Act are, unlike most interlocutory rulings, immediately appealable. 9

---

[1]The former figure is supported by the accountant's evidence if the jury chose to resolve in Colón's favor the discrepancies in the accountant's testimony. The source of the $75,000 figure is less clear, but the defendants say nothing about a lack of evidence on this issue.

U.S.C. §§ 4, 16(a)(1)(B) (2000).  Nothing in the statute requires an immediate appeal but three circuits have held that the failure to promptly appeal such a denial may by estoppel foreclose the demanding party's right to arbitration, although this is not automatic and depends on a showing of prejudice to the other side.[2] The reason is that it is wasteful to have a full trial and then determine by a post-trial appeal that the whole matter should have been arbitrated and so start again.

Ordinarily, no forfeit results from the failure to take an available interlocutory appeal (e.g., denials of qualified immunity).  Pearson v. Ramos, 237 F.3d 881, 883 (7th Cir. 2001) (Posner, J.); 16 Wright & Miller, Federal Practice and Procedure, § 3921 (2d ed. 1996).  But with arbitration denials, the argument for forcing an immediate appeal is stronger than usual; not much can be said for allowing the party who sought arbitration to litigate and later seek arbitration on appeal if the trial goes badly instead of appealing immediately.  See Cotton v. Slone, 4 F.3d 176, 180 (2d Cir. 1993).

---

[2]The three are the Second, Fifth and Eighth Circuits.  Cargill Ferrous Int'l v. Sea Phoenix MV, 325 F.3d 695, 700 (5th Cir. 2003); John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1303 n.3 (8th Cir. 1994); Cotton v. Slone, 4 F.3d 176, 180 (2d Cir. 1993); see also 15B Wright & Miller, Federal Practice and Procedure, § 3914.17 (2d ed. Supp. 2003).  The Fourth Circuit appears to have rejected this view.  See Clark v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 924 F.2d 550, 553 (4th Cir. 1991).

We are sympathetic to the approach of the Second, Fifth and Eighth Circuits, and it is wise for us to make this clear by dictum so as to give warning to the bar. Yet this case is a perfect example of why one would not employ a mechanical forfeiture rule. Because in this case the district judge did not definitively deny the arbitration request until after trial began--indeed, until all the evidence was taken--any holding by us that the defendants' had to appeal the denial immediately so as to avoid an unnecessary trial would be ridiculous: the trial had already occurred.

One might at first wonder why the trial judge delayed in resolving the question of arbitrability: ordinarily the purposes of arbitration are best served by having the issue decided before trial. However, in what may be an over-cautious reaction to Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959), the arbitration statute specifically commands that in non-admiralty cases a jury (if timely demanded) must be used to decide the validity of the agreement if it is disputed. 9 U.S.C. § 4 (2000); Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 129-30 (2d Cir. 1997).

Turning next to the question whether the district court erred in denying arbitration, the matter is complicated but our disposition is made swifter by the way the defense has framed the issue. The January 1995 agreement does not by its terms apply to either of the two claims submitted to the jury: neither involved a claim by Colón against Grace U.S.A. and on appeal the defendants'

brief in its argument section refers only to the U-4. The alleged January 1997 agreement is out of the case because it was not authenticated, a point that the defendants do not dispute.

Conceivably, more might have been said by the defendants about the January 1995 agreement. For example, one might argue that the agreement to arbitrate between Colón and Grace U.S.A. ought to be read to cover claims by Colón against officers of Grace U.S.A. so far as the latter acted in an official capacity.[3] But how far such arguments might have force, and whether they apply to any part of the claims actually made in this case, have not been briefed by defendants and will certainly not be pursued by the court sua sponte. Mass Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 43 (1st Cir. 1998).

As for the U-4, this was surely a possible basis for arbitration. Unlike the January 1995 agreement, the U-4 is by its terms not limited to claims between Grace U.S.A. and Colón; it applies to any claim that Colón has against anyone that the NASD rules require to be arbitrated. The defense says that this includes any claim by Colón against Kaweske relating to the securities business.

---

[3]The district judge said that the January 1995 agreement was irrelevant once Colón had said that he made no claims under it; but whether a claim is one "under" that agreement could depend more on its substance than on Colón's characterization--a point that defense counsel grasped at trial but has not developed on appeal.

The assertion, although not implausible, is offered in one sentence and without citation. The U-4 form does not answer the question on its face: it refers to claims that NASD rules require to be arbitrated. Nothing in the defendants' brief discusses or cites to the internal NASD rules, court precedents or any other materials that would illuminate the issue of just how far the clause extends beyond disputes with the company or customers. Absent such information, the defendants' argument based on the U-4 must fail.

Defendants also say that the district court mistakenly allowed Colón to recover based on an alleged <u>oral</u> understanding between Colón and Kaweske that modified the earlier written agreement made in January 1995 as to the share of commissions intended to accrue to Colón. As best we can tell, this supposed modification was part of the theory on which the plaintiffs' recovery rests, and the January 1995 agreement did have a clause forbidding oral modifications, although Colón has arguments of his own as to why this does not matter.

However, once again this terse argument by defendants is simply not developed on appeal. There is a lengthy recitation in the fact section of the defense brief as to some of the evidence bearing on this and other issues. But it is not this court's role to assemble a coherent argument for one side merely because evidentiary pieces are mentioned somewhere among the factual

recitations and the topic sentence of the argument is supplied in the argument section of the brief.  Cf. U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 599 (1st Cir. 1993).

There are two more short-form arguments offered by defendants' brief.  One is their claim, nowhere developed by argument, that Colón has no authority as a 50% owner to represent Grace Puerto Rico in litigation.  The other is that the verdict is "not supported by the evidence admitted at trial."  Both are invitations to this court to fill in the blanks by itself, which is not our job.

Affirmed.